*IN THE DISTRICT COURT OF THE UNITED STATES*
*FOR THE MIDDLE DISTRICT OF ALABAMA*
*SOUTHERN DIVISION*

*ANGELA DENISE NAILS,*

*Plaintiff,*                                     *Case No. 1:06cv737-WKW*

*v.*

*DOTHAN RESUCE MISSION,*

*Defendant,*


## OBJECTION TO RECOMMENDATION

*The action presently before the court on defendant's motion for summary judgement. Where the nonmoving party will hear the burden of proof at trail on a dispostitive Rule56(e)... requires the nonmoving party to go into the pleadings and by... affidavits, or by the; depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trail... We do not mean that the non-moving party must produce evidence in a form that would be admissible at trail in order to avoid summary judgment... Rule 56(e) permits proper summary judgement motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleading themselves. The*

*1*

plaintiff is filing a[s]worn affidavit opposing the motion of summary judgment filed by the defendant(s).   In the remendation the court construes that the plaintiff Rule 56(f) motion is substantively insufficient.  The plaintiff motion is not insufficient. Rule 56(f) clearly states to the court.  Rule 56(f) provides that if the party opposing a motion for summary judgment cannot yet submit evidence supporting its opposition, the court may refuse the application etc.  The plaintiff is referring to this part of 56(f). There is also 56.  Rule 56 permits a defending party to move for summary judgment.  While summary judgment motions need not be based on evidence outside the pleading, they are often based on affidavits and other evidence.  Rule 56(f) section 425.16 limits discovery and makes future discovery on exception, rather than the rule.  Rule 56 dose not limit discovery.  On the contrary, it ensures that adequate discovery will occur before summary judgment is considered.

To start with (1) The defendant(s) has no evidence, or evidence outside the pleadings.  The defendant(s) has made request in their summary judgement that the plaintiff information for the plaintiff case not be used at trail.

*The defendant(s) summary judgment dose included the plaintiff Urban Development and Housing Act of 1992" 1201et seq.*

*(1) The defendant [s]worn to stating that the defendant(s) have never received any kind of grant money, the defendant wants the court to remove any information that the defendant(s) have received grant money,in the past and in the future, and*

*(2) Title III the defendant(s) wants Title three to not be a part of the trail. And therefore because the defendant(s) are not willing to provide the proof that Title III is public accommodation for any disabled person  the summary judgement should not be allowed,  because with the added facts form the plaintiff that Title III is part of  civil suit against the defendant summary judgment should never had been allowed.*

*(3) Discovery Rule 56(e) it states in one  sentence "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trail in order to avoid summary judgment.  The court is requesting evidence  in the Recommendation of the Magistrate Judge.  Rule 56(e) dose not allow that asking for evidence be requested if the court thinks that it will be admissible at trail.*

3

## *DOCUMENTS LISTED REQUESTED IN RECOMMENDATION*

A.  *Letter form Social Secruity Office facts of the ADA Title III*

B.  *Letter from Alabama State Dothan Reuse Mission application for Federal grant money, dates grant money was given, the kind of grant the Dothan Rescue Mission received the grant money.*

C.  *Title III Rule Private right of action for damages,money damages can be awarded. 36.5 Relief iii(2)*

D.  *Title III Rule Dothan Rescue Mission is not exempt form Title III Rule ADA dose not exempt religion organizations as a provision for American with Disability Act,inless property is used only as a church and for nothing else, then the Dothan Rescue Mission could be exempt as a part tittle III rule.*

E.  *Urban Development and Housing Act of 1992.  Federal Rule of Civil Procedure*


## *1996 REGISTRATION CARD  FOR TRAIL*

*Reference to the 1996 registration card. The card has everything to do with the 2003/2005 complaint.  The defendant(s) said that because the plaintiff was barred*

4

*in 1996 form the Dothan Rescue Mission that the Dothan Rescues Mission was not willing to allow the plaintiff any more service of the Dothan Rescue Mission lodging and the meal tickets for the lunch room. Tickets were given even though the plaintiff was barred form the Dothan Rescue Mission and the Dothan Rescue Mission was reluctant to give the plaintiff any food tickets. FRCP 26(B)(1) is information relevant likely to lead to admissible information.*

## PLAINTIFF IS MAILING COPYS OF THE DEFENDANT'S FIRST INTERROGATORIES TO PLAINTIFF

*The defendant did not answer any of the interrogatories,admission or production questions properly as stated in the rule. Other question and answers of the plaintiff interrogatories,the plaintiff admission and the plaintiff production all the information highlighted could have been answered subject to rule of discovery Rule 26 General provision duty of disclosure. Rule 33Interrogatories and Rule 37 under discovery failure to cooperate gives a party the right to compel. Rule 37(a)(3) Evasive or incomplete answers considered failure to answer. The court said to "provide the court with a copy of the interrogatories she(plaintiff) claims not answered properly"See Letter A)*

## *ADA TITLE III RULE*

*The plaintiff is a person of Title III of the ADA and asde finded by 42 U.S.C.*

*12102(2). The court statement the plaintiff is receiving Social Security disability*

*with assistant from Medicaid and Medicare". The Title III of ADA defined by 42*

*U.S.C. 12102(2) dose apply. The social security office has determined that the*

*plaintiff disorder follows the guidelines of ADA. The plaintiff disorder is a*

*physical Affective Disorder is an impairment that limits one major life activities,*

*not being able to go to work daily(see Letter B)*

## *URBAN DEVELOPMENT HOUSING ACT*

*Urban Development Housing Act of Section 28 UDHA Act of The Republic of*

*the Philippines dose have applicability to defendant(s) operation of its homeless*

*shelter in Dothan, Alabama. The Article 1 Title, Policy, Program and Definition of*

*Terms.*

*Section 1. Title. "This Act shall be know as the "Urban Development and Housing*

*Act of 1992".*

*Section 2. Declaration of State Policy and Program Objectives.*

6

*Section 2 makes it clear when it is states the Declaration of State Policy and program Objectives. One the Republic of the Philippines, Philippine's is a country and is not a state. A state is within the United States of America. The Republic of the Philippines uses the Urban Housing Development Act.*

*Statement on the first page: Be it enacted by the Senate and Housing of Representatives of the Philippines in Congress assembled.*

*The legal definition term of FRCP for enacted means: Once legislation. FRCP 24(b)(2) The word "processing" as used in these rules generally refers to a litigated.*

*Federal Civil Rule Of Procedure Rule the Urban Development Housing Act of Section 28 UDHA Act of The Republic of the Philippines is a Urban Development Housing Act, the United States America also uses the act of 1992.*

### ***EVICTION AND DEMOLITION (RULE AND PROCEDURE)***

*In the execution of eviction or demolition involving underprivileged and homeless citizens, the following are mandatory: (Section 28, UDHA, Implementing*

7.

*and Regulations)*

*. 30 day notice before eviction*

### FIRST ADMENDMENT

"Defendant argues that plaintiff can not prevail on her First Amendment claim

because she cannot demonstrate the Dothan Rescue Mission is an actor". The

defendant(s) can not throw issues into the plaintiff complaint when the plaintiff

never brought any of the issues into the first complaint. The plaintiff did not state

that the plaintiff was suing the defendant(s) because they were or were not actors

of the state of Alabama. It is clear to the court what the plaintiff original

complaint is not stating the complaint is based on a claim that the defendant(s) are

not state actor, nor is the claim based on stating a claim against religlion. The

defendant(s) claims that they are a religious organization and a claim should not

be held against them. First Amendment is to support etc. The defendant(s) were

not willing to support the plaintiff in the testimony of Ann Clubert and other

information such as religion would be to support if a part of the defendant(s)

organization functions. The defendant(s) are not willing to take credit under the

First Admenment. Or the defendant(s) willing to take the First Admenment into

8

Consideration against the plaintiff disbarrment and was reluctant to provide meal

tickets because of disbarrment issues. It seems that the defendant(s) never wanted

to support the plaintiff after the disbarrment in 1996.   42 U.S.C. 1983 Provides

First Amendment, If discrimination is domesticated in anyway.  Of the first

amendment which is to  support.


## *TITLE III REGULATION*

Title III Regulation 36.201(a) Prohibition of discrimination. No individual shall

be discriminated against on the basis of disability in the full and equal enjoyment

of the goods, services, facilities, privileges, advantages or accommodation of any

place of pubic accommodation by any private entity who ownes, leases also to

included homeless shelters(or leases to), or operates a place of public

accommodation.  The court is not entitled to its opinion.  The plaintiff disability by

evidence follows under the Title III which the defendant(s) summary judgment

states that they have not  discriminate against the plaintiff.  The plaintiff without

any other evidence is privileged to Title III because of the plaintiff is receiving a

social security check every month and can not work, Medicaid and Medicare cards

9

are provided to the plaintiff for benefits of doctor visits and hospital stays. The check and not being able to work by itself provides the plaintiff an advantage of Title III public accommodation of any place by any private entity. The defendant(s) are still failing to provide any services to the plaintiff today. No meals or any other services the Dothan Rescue Mission Provides. Stated in Title III 36.201(a) enjoyment of the goods, services, facilities, privileges must be provided or the entity is discriminating against an indivual.

## *PRIVATE SUITS*

Title III 8.2000 Any person who is being subject to discrimination on the basis of disability in violation of Title III of the Act may file a civil action for injunctive relief. Also when a person has reasonable ground for believing that he or she is "about to subjected to discrimination" because of a violation of the new construction and alterations requirements of the ADA he or she may file a civil action.

## *INCREASE DAMAGES*

*The plaintiff in the plaintiff civil suit against the defendant is requesting a one time increase of damages in the plaintiff civil complaint. The action is not on trail calendar Federal Civil Rule of Procedure Rule 15(a). The plaintiff would like to increase the dames to $1,000.0000.00 one million dollars.*

## *UNDER COLOR OF STATE LAW*

*\_\_To act "under color of state law" means to act beyond the bounds of lawful authority, but in such a manner that the unlawful acts were done while the official was purporting or pretending to act in the performance of his official duties. In other word's the unlawful acts must consist of an abuse or misuse of power which is possessed by the official only because he is an official, and official under a State law, but also acts done by an official under any ordinance of the a county or municipality of the State, as well as acts done under any regulation issued by any State or County or Municipal official, and even acts done by an official under color of some State or local custom.*

*The defendant(s) powers and performance of the Dothan Rescue Mission official*

*11*

duties were unlawful acts of abuse and misuse of powers of county acts. *Federal Civil Rule of Procedure* "42 U.S.C. S 1983(1988) "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivations of any rights, privileges, secured by the Constipation and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The defendant harmed the plaintiff rights to privileges secured by the Constitution and laws under the disability laws to be treated fairly. The defendant(s) refusal to accept the plaintiff as a resident under the color of state law was a hardship on the plaintiff being a disabled person. The county ordinances allows the Dothan Rescue Mission to run their business only under the concerns that the Dothan Rescue Mission follows the county ordinances. One being that the shelter must provide services to people that are in need of shelter who are homeless but making sure that the people have a clean place to live, garbage is sat out and picked up. Another county ordinances would be helping people in need of shelter and keeping the rules of the shelter for everyone.

*12*

## *ORANDICE CITY OF DOTHAN*

The defendant's has said that they are receiving money form the Dothan Utilities. Angela Palmer who works for the Dothan Utilities has [s]worn on an affidavit that the Dothan Utilities in Dothan, Alabama provides donated funds form other customers payment of utilities bills to the Dothan Rescue Mission. Dothan utilities pays utilities at the shelter from the City Code of Ordinances-Utilities Section 102, this makes the Dothan Rescue Mission fall under a City of Dothan ordinance(see Letter C).

## *DOTHAN RESUCE MISSION GRANT FUNDING*

The Dothan Rescue Mission has received grant funding in the past and may receiving grant funding from the State of Alabama(see Letter D).

*ANGELA DENISE NAILS*
*PRO SE ATTORENY*

*13*

## CERTIFICATE OF SERVICE

*The plaintiff hereby certify that this date that the plaintiff has served a copy of this document on the defendant by placing the document in the United States Mail in a properly addressed envelope with prepaid postage.*

*UNITED STATES DISTRICT COURT*
*P.O. Box 711*
*Montgomery, Alabama 36101*

*Attorney Walding*
*P.O. Box 1469*
*Dothan, Alabama 36302*

*The 16th March 2007*

*ANGELA DENISE NAILS*

*PRO SE ATTORNEY*

*DOCUMENT*

A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGELA DENISE NAILS,          *
                              *
        PLAINTIFF,            *          1:06-CV-00737.WKW
                              *
vs.                           *
                              *
DOTHAN RESCUE MISSION,        *
                              *
        DEFENDANT.            *

## DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

THE DEFENDANT, Dothan Rescue Mission, answers or otherwise responds to Plaintiff's interrogatories as follows:

"1.  State the full name of the defendant and other names of the Dothan Rescue Mission organization names and the present mailing address.  How long has the Dothan Rescue Mission been in standing in the Houston County community. State how long has the Dothan Rescue Mission been in business."

RESPONSE: Dothan Rescue Mission, P.O. Box 6691, Dothan, Alabama 36301, since 1979.

"2. State the name and telephone numbers, the address of any person that has information to support or tends to support any one or more of you contentions, allegations, or positions in this matter."

RESPONSE: This information was provided to you in the Defendant's initial disclosures as required by Federal Rule of Civil Procedure 26. In addition to the initial disclosures, the following person may have information: Lisa Smith, 1216 Harris Butler Rd., Pansey, Alabama 36370. Telephone number: 334-794-4637.

"3. For each person listed in the answer in Interrogatory Number 2 give the information you know the person(s) possesses."

RESPONSE: All of the people listed in the initial disclosures and Lisa Smith have information concerning the Plaintiff's conduct and history at the Dothan Rescue Mission and/or the day-to-day operations, financial history, and/or religious nature and aims of the Dothan Rescue Mission.

"3. Name all of the document that you have that will give any and all information that is dealing with the complaint."

RESPONSE: These documents were provided to you in the initial disclosures. Defendant objects to this question, also, because it would cover documents protected by attorney-client privilege and/or the work product doctrine.

"4. Give information of the plaintiff and the defendant relationship. When the plaintiff was a resident of the Dothan Rescue Mission. Information of the meal slips give to the plaintiff how the plaintiff received the slips form the person at the desk, and the same information for the financial assistant given to the plaintiff and the same information when the plaintiff stayed at the Dothan Rescue Mission."

RESPONSE: Defendant refers you to the documents provided to you in the initial disclosures.

Page 3 of 7

"5. Give information of the background of the person managing the Dothan Rescue. Information on the board members background."

RESPONSE: Defendant objects to this question because it is irrelevant, immaterial, and is not reasonably calculated to lead to admissible evidence.

"6. Give the names of any person or groups that have file law suite against The Dothan Rescue Mission. Give names of person who the Dothan Rescue Mission has filed legal action against in court hearing or out of Court hearing."

RESPONSE: To the best of our knowledge, this case is the first time Dothan Rescue Mission has been sued. Dothan Rescue Mission has not sued anyone before to the best of our knowledge.

"7. Give any pending legal action against you or you have against someone else. Give the county and state Federal District court, State court, District court or Circuit Court."

RESPONSE: Aside from this suit there are none.

Page 4 of 7

"7.  Information of any controversy involved or allegation made in each lawsuit to which you have been a party."

RESPONSE: See response to question number 6.


"8.  Information of the out come of any legal action or the outcome of the legal action.  Including the amount paid or the amount paid to the Dothan Rescue Mission."

RESPONSE: See response to question number 6.


"9.  Are you aware of your obligation under the Federal Rule of Civil Procedure to timely supplement your answers to interrogatories?

RESPONSE: Yes.


AS TO INTERROGATORY ANSWERS:



Dothan Rescue Mission
By: Brad Hardy
Its: Executive Director



Page 5 of  7

STATE OF ALABAMA
HOUSTON COUNTY.

This date, Brad Hardy, acting as Executive Director of the Dothan Rescue Mission, and with due and proper authority, personally appeared before the undersigned authority, a Notary Public in and for the State of Alabama and/or a person duly authorized by law to administer oaths, and, after being duly sworn, states under oath that the facts set forth in the above are true and correct to the best of his knowledge, information and belief.

Sworn to and subscribed before me this the _14th_ day of _December_, 2006.

_Charlotte Mackert_

(S E A L)                    NOTARY PUBLIC
                             My Commission Expires: _5/09/2010_


AS TO OBJECTIONS:

                    HARDWICK, HAUSE, SEGREST & WALDING

                    BY: _____
                        Kevin Walding (WAL036)
                        Attorney for Plaintiff
                        Post Office Box 1469
                        Dothan, Alabama 36302
                        Phone:    (334)794-4144
                        Fax:      (334)671-9330


                    Page 6 of  7

## CERTIFICATE OF SERVICE

I hereby certify that, this date, I have served a copy of this document on the following individual(s) and/or attorney(s) of record by placing same in the United States Mail in a properly addressed envelope with prepaid postage.

Angela Denise Nails
342 South Saint Andrews Street
Apartment 808
Dothan, Alabama 36301

This the _14_ day of December, 2006.

_____
Of Counsel

Page 7 of 7

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANGELA DENISE NAILS,             *
                                 *
    PLAINTIFF,               *        1:06-CV-00737.WKW
                                 *
vs.                              *
                                 *
DOTHAN RESCUE MISSION,           *
                                 *
    DEFENDANT.               *

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### REQUESTS FOR ADMISSION

THE DEFENDANT, Dothan Rescue Mission, by and through

counsel, responds to the Plaintiff's First Requests for

Admission as follows:

GENERAL OBJECTION:  The Defendant objects to the form

of all the Requests for Admission.  Despite its best

efforts, Defendant cannot comprehend what matters the

Plaintiff is asking the Defendant to admit or deny in most

if not all of the requests, but specifically in requests

numbers: 3, 5, 7, 8, 9, 11, 12, 13, 17.  These requests are

unintelligible.  The Defendant cannot admit or deny

truthfully a request that is unintelligible.

"1.  The defendant information of dates of what the

defendant says the alleged violation occurred 2003."

RESPONSE: Defendant is unable to understand exactly

what it is being asked to admit; therefore the request is denied. Defendant admits that the Plaintiff has alleged a violation occurring in May 2003.

"2. The defendant information of dates of what defendants say what violation occurred in 2005."

RESPONSE: Defendant is unable to understand exactly what it is being asked to admit; therefore the request is denied. Defendant admits that the Plaintiff has alleged a violation occurring in June 2005.

"3. The information if the defendant fills plaintiff relgiouion organization has any reason why the plaintiff was barr for life."

RESPONSE: Defendant is unable to understand exactly what it is being asked to admit; therefore the request is denied. The Defendant admits that it is a religious organization.

"4. The information why the plaintiff was barred for life was there any assaults or drug usage or any violent crime which happen at the time the plaintiff was a resident

at the Dothan Rescue Mission."

RESPONSE: Defendant is unable to understand exactly what it is being asked to admit; therefore the request is denied. To the extent Plaintiff is asking whether assault, drug usage or a violent crime had something to with Plaintiff being barred, Defendant has no knowledge of such occurring.

"5. The information; because the Dothan Rescue Mission is a privately funded organization is plaintiff legal action against the defendant to prevent the defendants from servicing the plaintiff ever again or was the privately funded organization prohibiting the service to the plaintiff at the Dothan Rescue Mission during the years of the plaintiff resident at the Dothan Rescue Mission."

RESPONSE: Defendant is unable to understand exactly what it is being asked to admit; therefore the request is denied. Defendant admits that it is a private religious organization funded by donations from private individuals and/or organizations; the Defendant does not receive government funds (funds paid by taxpayers to the government).

"6.   The information of the plaintiff was involved in an altercation with the former Executive Director of the Dothan Rescue Mission, Harry Culbreth, on or about April 8, 2005 was the Dothan Police Department called, were their any witness to the altercation and what criminal statue would concluded the altercation April 8, 2005."

RESPONSE:   Defendant is unable to understand exactly what it is being asked to admit; therefore the request is denied. Defendant denies specifically that the altercation with Harry Culbreth occurred in 2005. The altercation occurred in April 2003.   Defendant admits the Dothan Police Department was not called.

"7.   The information of times and dates the telephone calls were to Harry Culbreth and telephone numbers of individual who contacted Harry and method of what kind of harassment what was said or what took place at the time of the harassment."

RESPONSE: Defendant objects to this request because it is not a request for admission, it is an interrogatory. Further, the question is unintelligible.

Page 4 of   9

"8. What happen during the altercation the plaintiff was banned for life of the Dothan Rescue Mission."

RESPONSE: Defendant objects to this request because it is not a request for admission, it is an interrogatory. Further, the question is unintelligible.

"9. The meals and monetary support from the Dothan Rescue Mission what month, year and dates.

RESPONSE: Defendant objects to this request because it is not a request for admission, it is an interrogatory. Further, the question is unintelligible. However, Defendant's initial disclosures contained records showing when Plaintiff received assistance and what types of assistance she received.

"10. The meals and monetary support is that the reason the plaintiff was never able to receive any assistant."

RESPONSE: Denied. The Plaintiff did in fact receive assistance from the Defendant as is shown in the documents produced during initial disclosures.

Page 5 of 9

"11. The supporting record that plaintiff was seeking shelter from the Dothan Rescue Mission 2005."

RESPONSE: Defendant objects to this request because it is not a request for admission, it is either an interrogatory or a request for production of documents. Defendant refers Plaintiff to the documents produced during initial disclosures.

"12. Was there any written documents from the person who was there with the females who was in control of the female, any written statements from the other residents of any violation of rules and regulations.

RESPONSE: Defendant lacks sufficient information with which to either admit or deny, therefore the request is denied. Defendant refers Plaintiff to the documents produced during initial disclosures.

"13. The defendant on what year noticed the plaintiff of not receiving any assistant."

RESPONSE: Defendant objects to this request because it is not a request for admission, it is an interrogatory. Further, the question is unintelligible.

"14. The defendant receives funds outside of private funds."

RESPONSE: Denied.

"15. Is the defendant organization for a homeless person."

RESPONSE: Admitted in part; denied in part.  One of the missions of the Dothan Rescue Mission is to minister to the needs, both spiritual and physical, of the less fortunate, some of whom could be homeless.

"16. Is the defendant have a restraining order to prevent helping the plaintiff."

RESPONSE:  Defendant objects to this request because it is not a request for admission, it is an interrogatory. Further, the question is unintelligible.  To the extent that the question asks whether Defendant sought a restraining order against Plaintiff the answer is no.

"17. The plaintiff owes the defendant no understanding of what the plaintiff will do while the defendant and the plaintiff have no business associations."

Page 7 of  9

RESPONSE: Defendant objects to this request, to the extent it is a request for admission, because the statement is unintelligible and makes no sense.

HARDWICK, HAUSE, SEGREST & WALDING

BY: _____
       Kevin Walding (WAL036)
       Post Office Box 1469
       Dothan, Alabama  36302
       PHONE:  (334) 794-4144
       FAX:    (334) 671-9330

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that, this date, I have served a copy of this document on the following attorney of record by placing a copy in the United States Mail in a properly addressed envelope with adequate postage.

Angela Denise Nails
342 South Saint Andrews Street
Apartment 808
Dothan, Alabama 36301

This the _14_ day of December, 2006.

_____
Of Counsel

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGELA DENISE NAILS,   *
          *
  PLAINTIFF,    *   1:06-CV-00737.WKW
          *
vs.         *
          *
DOTHAN RESCUE MISSION,  *
          *
  DEFENDANT.    *

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## REQUEST FOR PRODUCTION

THE DEFENDANT, Dothan Rescue Mission, by and through counsel, respond to the Plaintiff Angela Denise Nail's request for production as follows:

"1. Any documents names, listed consulted use to address the complaint of the defendant case."

RESPONSE: Defendant objects to this request because it seeks to invade the attorney-client privilege and/or the work product doctrine. The relevant documents supporting Defendant's position(s) in this case have been produced during the initial disclosure process.

"2. Any documents named to help the plaintiff first Interrogatories."

RESPONSE: Defendant may have consulted one or more of

"7.  Any document supporting that the plaintiff is not protected by the Americans with Disabilities Act and the plaintiff would not be a part of the American with Disabilities Act if a resident of the Dothan Mission."

RESPONSE: The Defendant objects to this request to the extent it seeks to invade the attorney-client privilege and/or the work product doctrine.  Without waiving these objections, and insisting on them, Defendant has no documents in its possession, custody or control meeting this description.

"8.  Any and all document or tangibles to the Public Shelter not being legally responsible under the Stewart McKinney Homeless Assistant Act."

RESPONSE:  The Defendant objects to this request to the extent it seeks to invade the attorney-client privilege and/or the work product doctrine.  Without waiving these objections, and insisting on them, Defendant has no documents in its possession, custody or control meeting this description.  Defendant states, however, that it is not a public shelter, but rather is a private religious organization.  Whether Defendant is legally responsible

under the act named calls for a legal opinion and conclusion.

HARDWICK, HAUSE, SEGREST & WALDING

BY: _____
Kevin Walding (WAL036)
Attorney for Defendant
Post Office Box 1469
Dothan, Alabama 36302
Phone    (334)794-4144
Fax      (334)671-9330

## CERTIFICATE OF SERVICE

I hereby certify that, this date, I have served a copy of this document on the following individual(s) and/or attorney(s) of record by placing same in the United States Mail in a properly addressed envelope with prepaid postage.

Angela Denise Nails
342 South Saint Andrews Street
Apartment 808
Dothan, Alabama 36301

This the ___14___ day of December, 2006.

_____
Of Counsel

Page 5 of 5

"5.  Document supporting the 2003 when the plaintiff
was ask not to come back to the Dothan Mission for lodging;
from any employee that would have control to give the
remendation to plaintiff housing arrangements at the Dothan
Rescue Mission."

RESPONSE:  The Defendant has produced the relevant
documents and tangibles during the initial disclosure
process in this matter.


"6.  Any supporting issues that will be tangibles
regarding the reason that the defendant attorney would not
consider that section 28 of the Urban Development and
Housing Act (UDHA) would not be a source of legal action
against the Dothan Rescue Mission."

RESPONSE: The Defendant objects to this request because
it seeks to invade the attorney-client privilege and the
work product doctrine.  What "the defendant attorney would
not consider" are matters protected by the work product
doctrine.  Without waiving these objections, and in fact
insisting on them, Defendant states that the UDHA is a law
of a foreign country and not of the United States.


Page 3 of  5

the documents produced during initial disclosures to help answer Plaintiff's written questions.

"3. Any documents or tangibles not limited to audiotapes, diagrams, charts, photographs, visual depictions of any kind, that will support defendant's allegations and contentions."

RESPONSE: The Defendant has produced the relevant documents and tangibles during the initial disclosure process in this matter.  The Defendant is unaware of any other documents or tangibles meeting this request, but if others are found they will be made available to Plaintiff.

"4. Documents that the defendant may have that a sign statements from the Dothan Police Department or any other employee of the Dothan Rescue Mission that will support the defendant claim in the case of plaintiff wrong doing."

RESPONSE: The Defendant has produced the relevant documents and tangibles during the initial disclosure process in this matter.

Page 2 of  5

*DOCUMENT*

**B**

\*\*\*  REC 2007067   163014 H6191AE0 C09V  CIPQYA3    PQA3   (F-KOS )  \*\*\*

SOCIAL SECURITY ADMINISTRATION

Date: March 8, 2007
Claim Number: 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A
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DI

ANGELA D NAILS
342 S SAINT ANDREWS ST
APT 808
DOTHAN AL 36301-2672

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

Other Important Information

  DISABILITY: AFFECTIVE DISORDERS

If You Have Any Questions

  If you have any questions, you may call us at 1-800-772-1213, or call your local Social Security office at 800-962-8726. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
1778 WHATLEY DRIVE
DOTHAN, AL 36303

If you do call or visit an office, please have this letter with you. It will help us answer your questions.

OFFICE MANAGER

Date: March 12, 2007
Claim Number: 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A
                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DI


ANGELA D NAILS
342 S SAINT ANDREWS ST
APT 808
DOTHAN AL 36301-2672


You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.


Type of Social Security Benefit Information

  You are entitled to monthly disability benefits.


If You Have Any Questions

  If you have any questions, you may call us at 1-800-772-1213, or call your local Social Security office at 800-962-8726. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

                SOCIAL SECURITY
                1778 WHATLEY DRIVE
                DOTHAN, AL 36303


If you do call or visit an office, please have this letter with you. It will help us answer your questions.


                    TERRY J. CLEMENTS

                    OFFICE MANAGER

# Alabama Medicaid Program

5000001316857

**ANGELA D NAILS**

DOB: 19610108    F/B    Card #05



**MEDICARE**                    **HEALTH INSURANCE**

**1-800-MEDICARE  (1-800-633-4227)**

NAME OF BENEFICIARY
**ANGELA D NAILS**

MEDICARE CLAIM NUMBER            SEX
**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-A**            **FEMALE**

IS ENTITLED TO            EFFECTIVE DATE

**HOSPITAL  (PART A)**    **11-01-2002**
**MEDICAL   (PART B)**    **11-01-2003**

SIGN
HERE ➡

Case 1:06-cv-00737-WKW-SRW    Document 56-3    Filed 03/19/2007    Page 5 of 10



## Public Accomodations: Title 3

### Who does Title III cover?

Title III covers businesses and nonprofit service providers that are public accommodations, privately operated entities offering certain types of courses and examinations, privately operated transportation, and commercial facilities. Public accommodations are private entities who own, lease, lease to, or operate facilities such as restaurants, retail stores, hotels, movie theaters, private schools, convention centers, doctors' offices, homeless shelters, transportation depots, zoos, funeral homes, day care centers, and recreation facilities including sports stadiums and fitness clubs. Transportation services provided by private entities are also covered by title III.

Public accommodations must comply with basic nondiscrimination requirements that prohibit exclusion, segregation, and unequal treatment. They also must comply with specific requirements related to architectural standards for new and altered buildings; reasonable modifications to policies, practices, and procedures; effective communication with people with hearing, vision, or speech disabilities; and other access requirements. Additionally, public accommodations must remove barriers in existing buildings where it is easy to do so without much difficulty or expense, given the public accommodation' Accommodation (or Reasonable accommodation) Any change in the work environment or in the way things are customarily done that enables an individual with a disability to have equal employment opportunities.Closes resources.

Courses and examinations related to professional, educational, or trade-related applications, licensing, certifications, or credentialing must be provided in a place and manner accessible to people with disabilities, or alternative accessible arrangements must be offered.

Commercial facilities, such as factories and warehouses, must comply with the ADA's architectural standards for new construction and alterations.

Case 1:06-cv-00737-WKW-SRW     Document 56-3     Filed 03/19/2007     Page 6 of 10

## affective disorder

**NOUN:**

> A mental disorder characterized by a consistent,
> pervasive alteration in mood, and affecting thoughts,
> emotions, and behaviors.

AMERICANS WITH DISABILITIES ACT

The American with Disabilities Act (ADA) gives civil rights protections to individua

Persons with disabilities, who are 20% of the population, are our nation's largest g
The Americans with Disabilities Act was signed into law on July 26, 1990.  The purpo
* Provide a clear and comprehensive national mandate to end discrimination against p
* Provide enforceable standards addressing discrimination against individuals with d
* Ensure that the federal government plays a central role in enforcing these standar
The term disability is defined as a physical or mental impairment that substantially

WHO IS PROTECTED UNDER THE ADA?

The first critical question is defining who is protected by the Americans with Disab
A person is considered disabled if he or she fits within any one of these categories
* Has a physical or mental impairment that substantially limits one or more of the m

* Has a record of such an impairment

* Is regarded as having such an impairment.

 A "physical or mental impairment" under the act includes:

* Any physiological disorder or condition, cosmetic disfigurement or anatomical loss

* Any mental or psychological disorder.

This covers a wide range of conditions.  Among the many conditions likely to be cons

NOTE: Not all physical or mental impairments constitute a disability under the law.
An individual's impairment should be assessed without considering mitigating measure

TITLE I EMPLOYMENT

## Disability and the Americans with Disabilities Act

Individuals with disabilities are protected against discrimination by the Americans with Disabilities Act and similar state statutes. (Langer, 1996)   Those same individuals may require disability insurance benefits to cover living expenses during periods when they cannot work.  Some individuals have filed suit alleging disability-based discrimination by their employers, while at the same time filing claims for disability benefits.  The courts have differed as to whether both claims can be made simultaneously. Some have rejected such claims, cf. *Cleveland* v. *Policy Management Systems Corp.*, 120 F. 3d 513, (5th Circuit 1997). Others, noting that claims for disability benefits do not involve the question of reasonable accommodations, allow both claims, C.f. *Swanks* v. *Washington Metropolitan Transit Authority*, 116 F. 3d 382 (D.C. Circuit, 1997) They noted that the heart of the anti-discrimination claim is that an individual with a disability is able to perform the essential functions of the job, with or without some accommodation, but is being subjected to disparate treatment because of the disability.  The disability insurance claim, however, is based on the fact that the individual is disabled and unable to perform the essential functions of the job.  The two claims, by the same individual during the same time period, are mutually exclusive.  One cannot claim that one is entitled to benefits due to an inability to work and then claim that one is able to work for the purpose of the discrimination claim.

Case 1:06-cv-00737-WKW-SRW    Document 56-3    Filed 03/19/2007    Page 9 of 10

## WHO IS PROTECTED UNDER THE ADA?

The first critical question is defining who is protected by the Americans with Disabilities Act? The obvious answer would be, of course, people with disabilities. This is a phrase that must be interpreted on a case-by-case basis. Two important questions to ask: Does this disability substantially limit one or more major life activities? Is this disability expected to be long term? If the answer to both questions is "yes," this person is probably protected under the ADA. Does this person have a record of a disability? ( A heart condition that was corrected by open heart surgery, kidney failure that required a transplant, for example). Is the person regarded as a person with a disability?

A person is considered disabled if he or she fits within any one of these categories.

* Has a physical or mental impairment that substantially limits one or more of the major life activities; walking, talking, seeing, hearing, breathing, speaking, learning, working, or caring for oneself.

* Has a record of such an impairment

* Is regarded as having such an impairment.

A "physical or mental impairment" under the act includes:

* Any physiological disorder or condition, cosmetic disfigurement or anatomical loss; or

* Any mental or psychological disorder.

Religious entity." The term "religious entity" is defined in accordance with section 307 of the ADA as a religious organization or entity controlled by a religious organization, including a place of worship. Section 36.102(e) of the rule states that the rule does not apply to any religious entity.

The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations. Religious organizations and entities controlled by religious organizations have no obligations under the ADA. Even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage. Thus, if a church itself operates a day care center, a nursing home, a private school, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part. The religious entity would not lose its exemption merely because the services provided were open to the general public. The test is whether the church or other religious organization operates the public accommodation, not which individuals receive the public accommodation's services.

Religious entities that are controlled by religious organizations are also exempt from the ADA's requirements. Many religious organizations in the United States use lay boards and other secular or corporate mechanisms to operate schools and an array of social services. The use of a lay board or other mechanism does not itself remove the ADA's religious exemption. Thus, a parochial school, having religious doctrine in its curriculum and sponsored by a religious order, could be exempt either as a religious organization or as an entity controlled by a religious organization, even if it has a lay board. The test remains a factual one -- whether the church or other religious organization controls the operations of the school or of the service or whether the school or service is itself a religious organization.

Although a religious organization or a religious entity that is controlled by a religious organization has no obligations under the rule, a public accommodation that is not itself a religious organization, but that operates a place of public accommodation in leased space on the property of a religious entity, which is not a place of worship, is subject to the rule's requirements if it is not under control of a religious organization. When a church rents meeting space, which is not a place of worship, to a local community group or to a private, independent day care center, the ADA applies to the activities of the local community group and day care center if a lease exists and consideration is paid.

"Service animal." The term "service animal" encompasses any guide dog, signal dog, or other animal individually trained to provide assistance to an individual with a disability. The term is used in 36.302 (c), which requires public accommodations generally to modify policies, practices, and procedures to accommodate the use of service animals in places of public accommodation.

*DOCUMENT*

C

STATE OF ALABAMA
DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS
GRANTS AWARDED TO CITY OF DOTHAN
10/1/1993 THROUGH 3/15/2007

| DIVISION | GRANT NUMBER | GRANTEE NAME | BEGIN DATE | END DATE | BUDGETED AMOUNT |
|---|---|---|---|---|---|
| CD | PED RET BROC 94 04 | CITY OF DOTHAN | 10/1/1993 | 9/30/1994 | 1,237.00 |
| LETS | 94 03 PT315 04 | CITY OF DOTHAN | 10/1/1993 | 9/30/1994 | 46,761.52 |
| LETS | DB 93 07 0008 | CITY OF DOTHAN | 1/1/1994 | 12/31/1994 | 30,926.00 |
| LETS | DB 93 07 0009 | CITY OF DOTHAN | 1/1/1994 | 12/31/1994 | 70,688.00 |
| CD | ESG94039 | CITY OF DOTHAN | 5/2/1994 | 3/31/1997 | 130,000.00 |
| LETS | DB 94 07 0001 | CITY OF DOTHAN | 6/1/1994 | 5/31/1995 | 212,500.00 |
| EWT | 1EX SECP94 241 | CITY OF DOTHAN | 7/1/1994 | 6/30/1995 | 8,985.95 |
| LETS | 95 03 PT315 04 | CITY OF DOTHAN | 10/1/1994 | 9/30/1995 | 22,639.36 |
| CD | 736 | CITY OF DOTHAN | 1/17/1995 | 12/1/1996 | 51,460.00 |
| LETS | DB 95 07 0004 | CITY OF DOTHAN | 6/1/1995 | 5/31/1996 | 249,999.75 |
| LETS | 96 03 PT315 04 | CITY OF DOTHAN | 10/1/1995 | 9/30/1996 | 29,937.85 |
| LETS | JP 95 07 0001 | CITY OF DOTHAN | 4/1/1996 | 9/30/1997 | 16,640.64 |
| LETS | 97 03 PT315 04 | CITY OF DOTHAN | 10/1/1996 | 9/30/1997 | 19,896.28 |
| LETS | 96 JP JC 003 | CITY OF DOTHAN | 10/1/1997 | 9/30/1998 | 41,650.97 |
| LETS | 98 SP PT 010 | CITY OF DOTHAN | 10/1/1997 | 9/30/1998 | 9,933.04 |
| LETS | 98 JP JC 009 | CITY OF DOTHAN | 10/1/1998 | 9/30/1999 | 91,758.59 |
| LETS | 98 JB 06 002 | CITY OF DOTHAN | 10/1/1999 | 12/31/2000 | 50,528.91 |
| CD | ADECA 2001 DO 412 | CITY OF DOTHAN | 10/1/2000 | 9/30/2001 | 30,000.00 |
| CD | ADECA 2001 DO 413 | CITY OF DOTHAN | 10/1/2000 | 9/30/2001 | 10,000.00 |
| CD | ADECA 2001 DO 491 | CITY OF DOTHAN | 10/1/2000 | 9/30/2001 | 48,000.00 |
| CD | ADECA 2001 DO 498 | CITY OF DOTHAN | 10/1/2000 | 9/30/2001 | 15,000.00 |
| LETS | 99 JB 06 002 | CITY OF DOTHAN | 10/1/2000 | 9/30/2001 | 36,208.38 |
| CD | ADECA 2002 DO 36 | CITY OF DOTHAN | 10/1/2001 | 9/30/2002 | 200,000.00 |
| LETS | 00 JB 06 001 | CITY OF DOTHAN | 10/1/2001 | 9/30/2002 | 53,294.90 |
| LETS | 01 JB 02 001 | CITY OF DOTHAN | 10/1/2002 | 9/30/2003 | 10,591.16 |
| CD | 02 LW 01 787 | CITY OF DOTHAN | 11/8/2002 | 11/1/2004 | 100,000.00 |
| CD | 03 RT 54 007 | CITY OF DOTHAN | 12/9/2002 | 10/1/2004 | 50,000.00 |
| EWT | 1EX SEP05 04 | CITY OF DOTHAN | 10/1/2004 | 9/30/2005 | 10,000.00 |
| CD | 05 LW 865 | CITY OF DOTHAN | 3/30/2005 | 3/30/2007 | 150,000.00 |
| CD | 06 LW 880 | CITY OF DOTHAN | 10/1/2006 | 9/30/2007 | 200,000.00 |

GRAND TOTAL        1,998,638.30

This paper describes the provision of emergency shelter and services to homeless persons in the United States. In general, emergency shelters for the homeless provide indoor space with beds and meals to those who have no other place to stay. Common variations of emergency shelters include the night-only shelter (which requires guests to be elsewhere during the day), the day-only shelter (which provides daytime space, meals, and sanitary facilities but not overnight sleeping space), and 24-hour shelters (which can be used by guests around the clock). Different types of shelters may serve different populations. Shelters also vary greatly in size, from fewer than 10 beds to several hundred beds.

In large part, this paper grows out of an evaluation of the Emergency Shelter Grants (ESG) Program, a Federal program that has been an important factor in expanding the quality and quantity of shelter and services since 1986. The ESG evaluation is a major source of quantitative data collected from a representative national sample of emergency shelter providers in 1992. It provides the best description currently available of emergency shelters and homeless services in the United States. In addition, Abt Associates recently interviewed a number of major homeless services providers to update the ESG evaluation's findings.

Other sources of national data include HUD's 1988 National Survey of Shelters for the Homeless and an earlier examination of related federal support for emergency food and shelter. Apart from these, research on emergency shelters has primarily been descriptive, usually based on a single site; the results are therefore not comparable to a national survey.

## Providing Emergency Shelter

Since its inception, the focus of the Emergency Shelter Grants (ESG) program, administered by the U.S. Department of Housing and Urban Development, has been helping States and localities provide facilities and services to meet local needs, to shelter homeless people but at the same time to aid in their transition from temporary shelter to permanent homes. The ESG program was established by Congress through the Homeless Housing Act of 1986, to provide funds for emergency shelters and essential services for the homeless. One year later, it was incorporated into the McKinney Act of 1987 and took its place among an array of programs designed to address the plight of homeless men, women, and children in the United States. It has been a core part of homeless assistance throughout the first decade.

Each year, HUD allocates ESG funding to supplement State, local, and private efforts to improve the number and quality of emergency homeless shelters. The ESG funds may be used for the construction, rehabilitation, or conversion of buildings into homeless shelters, as long as the local agency uses the property as a homeless shelter for a specified time period. ESG grants also may be used for shelter operating expenses and administrative costs.

ESG funds are provided to States, territories, and qualified cities and counties; the States must distribute the funds to local governments or private nonprofit organizations. Local governments must match ESG grants dollar-for-dollar from other sources after the first $100,000. They may administer the grants themselves or distribute the funds to private nonprofit organizations.

Since 1987, ESG funding has helped provide shelter for many homeless persons in need of help. A total of $425.9 million in program funding was distributed nationwide through 1994. But ESG monies typically made up 6 to 10 percent of shelter budgets; the shelters this program supported usually had significant other funding sources. Among the most common other funding sources for emergency shelter were HUD's Community Development Block Grant program and two McKinney programs. The Federal Emergency Management Agency (FEMA) continues to administer the Emergency Food and Shelter grants, for which Congress appropriated $1,552.1 million between 1987 and 1998. In addition, the

*DOCUMENT*

**D**

# Finance

The Accounting Division's mission is to provide internal management with accurate and timely management information; to assist City departments in the procurement of goods and services; and, to conduct utility business with citizens in a courteous and pleasant environment.

<u>Code of Ordinances - Utilities - Section 102</u> 📄

<u>2004 Comprehensive Annual Financial Report</u>

<u>2005 Popular Annual Financial Report</u>

<u>2005 Comprehensive Annual Financial Report</u>



**Angela Palmer**
**Finance Director**
atpalmer@dothan.org
615-3141

**Finance Contacts**



**Tracie Williams**
**Administrative Secretary**
**More...**

## FINANCE MISSION STATEMENT:

To assist City personnel in the area of budgeted and actual financial reporting being mindful to ensure internal control and accountability of all City assets (cash, investments, equipment, etc.)

**1/29/07 - City Building Codes for Review**

The City of Dothan is receiving comments on its intent to adopt the 2006 ICC (International Code Council) Building Codes. Documents are  MORE▸